UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-80106-CIV-MARRA

NATIONAL UNION FIRE
INSURANCE COMPANY,

    Plaintiff,

vs.

LIBERTY MUTUAL INSURANCE
COMPANY,

    Defendant.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter was tried before the Court. Based upon the evidence presented during the bench trial, the argument of counsel[1] and otherwise being duly advised in the premises, the Court issues these findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

I. Introduction

On or about February 12, 2003, National Union Fire Insurance Company ("National Union") filed a declaratory judgment action pursuant to 28 U.S.C § 2201, et al., and Fla. Stat. §86.011, seeking a determination and declaration of its rights and obligations pursuant to the Commercial General Liability Policy issued by National Union to its named insured, "LaSalle Partners Limited, et al." and others (Policy No.: GL590-89-42), as read in conjunction with the Commercial General Liability Policy issued by Liberty Mutual Insurance Company ( "Liberty

---

[1] The Court notes that it has considered the arguments of counsel raised in the previous summary judgment motions as well as the motions for directed verdict.

Mutual") to its named insureds, GC Companies, Inc., General Cinemas, Ltd., and others (Policy No.: RG 2-611-004246-004). That original declaratory judgment action was amended by National Union on or about August 2006 to incorporate causes of action for breach of contract, equitable subrogation, and estoppel. By and through its action, National Union seeks reimbursement from Liberty Mutual for all monies National Union paid in defense and settlement of the underlying liability action styled as <u>Brenda Mallen v. General Cinemas Theatres of Florida, Inc., et al.</u>, Palm Beach Circuit Court Case No.: 98-005096 AO (hereinafter, the Mallen action), which totaled $1,249,716.73.

## II. Findings of Facts

*The Underlying Action*

1. LaSalle Investment Management, Inc.[2] ("LaSalle"), Schmier & Feurring Properties, Inc. ("Schmier"), Mission Bay Plaza, Ltd. ("Mission Bay") and General Cinema Theatres of Florida, Inc. ("General Cinema") were all Defendants in the Mallen action. (Mallen Am. Compl., Am. Joint Trial Ex. 1.)

2. Ms. Mallen suffered injury when ceiling tiles fell on her while she was watching a movie inside the General Cinema Theatre located at the Mission Bay shopping center on or about August 23, 1995. (Mallen Am. Compl. ¶¶ 16-18, Am. Joint Trial Ex. 1.)

3. Schmier was the real estate manager for Mission Bay. (Trial Tr. 314-15; Mallen Am. Compl. ¶¶ 7-9, Am. Joint Trial Ex. 1; Mallen Answer ¶¶ 7-9, Am. Joint Trial Ex. 2.)

---

[2] LaSalle Investment Management, Inc. is the same corporate entity as LaSalle Advisors Limited Partnership. (Trial Tr. 182; Deposition of Bernadette Wertheimer, Am. Joint Trial Ex. 41; Assignment between LaSalle and National Union, Am. Joint Trial Ex. 46.)

4.  As real estate manager, Schmier was responsible for managing the day-to-day affairs of the Mission Bay property. As asset manager, LaSalle would oversee the assets of Mission Bay. (Trial. Tr. 23, 148-49, 182-83, 314-15; Mallen Am. Compl. ¶ 9, Am. Joint Trial Ex. 1; Mallen Answer ¶ 9, Am. Joint Trial Ex. 2.)

5.  General Cinema was one of the tenants at Mission Bay. (Trial Tr. 30, 313, 315; Lease Agreement between Mission Bay and General Cinema Corp., Am. Joint Trial Ex. 8.)

6.  An Amended Final Judgment in the amount of $1,867,643.80 was entered in Ms. Mallen's favor in the Mallen action on or about July 9, 2002. (Trial Tr. 42-43; Am. Final Judgment, Am. Joint Trial Ex. 3.)

7.  The Amended Final Judgment in the Mallen suit was entered against Mission Bay as the owner of the property, Schmier as the real estate property manager, and LaSalle as the asset manager. General Cinema was found not to be negligent. (Trial Tr. 100-01; Am. Final Judgment, Am. Joint Trial Ex. 3.)

8.  The Amended Final Judgment was entered jointly and severally against LaSalle, Schmier and Mission Bay and in the amount of $1,788,268.84.[3] (Am. Final Judgment, Am. Joint Trial Ex. 3.)

9.  The July 9, 2002 Amended Final Judgment was appealed at the direction of National Union and the Mallen action was ultimately settled, on or about September 18, 2003 for $1,650,000.00. (Trial Tr. 104-09; Am. Final Judgment, Am. Joint Trial Ex. 3; Civil Appeal Bond, Am. Joint Trial Ex. 40; Settlement Agreement, Am. Joint Trial Ex. 56.)

---

[3] The remaining $79,375.00 of Ms. Mallen's judgment was entered against an entity not involved in the instant action.

10.  In order to effectuate settlement of the Mallen action, National Union tendered its $1,000,000.00 policy limits and Westchester Fire Insurance Company[4] tendered $650,000.00 towards settlement. (Trial Tr. 108-09; Proof of payment document from Westchester, Am. Joint Trial Ex. 39; Copy of National Union check, Am. Joint Trial Ex. 80.)

11.  Through the date of settlement, National Union provided a defense to LaSalle, Schmier and Mission Bay for the Mallen action. (Trial Tr. 94, 104.)

12.  Liberty Mutual, which insured and defended General Cinema, did not participate in the defense of LaSalle, Schmier or Mission Bay and did not contribute any money towards settlement or defense of the Mallen action. (Trial Tr. 97-98, 109.)

*The Insurance Policies*

13. National Union's Commercial General Liability Policy (Policy No.: GL 590-89-42) provided coverage to LaSalle, Schmier and Mission Bay. (National Union's insurance policy, Am. Joint Trial Ex. 5.)

14. National Union's policy contained a $1 million "each occurrence" limit. The policy provided coverage from October 1, 1994 to October 1, 1995.  (National Union's insurance policy, Am. Joint Trial Ex. 5.)

15. Liberty Mutual issued a Commercial General Liability Policy to G.C. Companies and General Cinemas, Ltd. on or about December 15, 1994. (Policy No.: RG2-611-004246-004). (Liberty Mutual's insurance policy, Am. Joint Tr. Ex. 6.)

16.  Liberty Mutual's policy contained a $2 million "each occurrence" limit. The policy

---

[4] Westchester Fire Insurance Company insured LaSalle, Schmier and Mission Bay as an excess carrier to National Union. (Intervenor Compl., DE 32.)

provided coverage from December 15, 1994 to December 15, 1995. (Liberty Mutual's insurance policy, Am. Joint Tr. Ex. 6.)

17. The Blanket Additional Insured Amendment in Liberty Mutual's policy provides in part:

> Section II - WHO IS AN INSURED is amended to include as an insured any person, organization, state or other political subdivision, trustee or estate for whom you [General Cinema] have agreed in writing to provide liability insurance. But:
>
> The insurance provided by this amendment:
>
> 2. Applies only to coverage and limits of insurance required by the written agreement, but in no event exceeds the scope of coverage or the limits of insurance provided by this policy;

*The Issuance and Terms of Liberty Mutual's March 10, 1995 Certificate of Insurance*

18. Liberty Mutual issued a certificate of insurance to Schmier on March 10, 1995, listing LaSalle, Schmier and Mission Bay as "additional insureds." (Certificate of Insurance, Am. Joint Tr. Ex. 7.)

19. The March 10, 1995 certificate of insurance was prepared by Liberty Mutual on Liberty Mutual's letterhead. (Trial Tr. 36; Certificate of Insurance, Am. Joint Tr. Ex. 7.)

20. The certificate of insurance was created and signed by Liberty Mutual's "authorized representative" and employee, Christine Merline. (Trial Tr. 36, 231, 243, 252, 273; Certificate of Insurance, Am. Joint Tr. Ex. 7.)

21. The certificate of insurance contains typewritten language which states as follows:

> ADDITIONAL INSURED: MISSION BAY PLAZA ASSOCIATES, LASALLE ADVISORS LIMITED PARTNERSHIP, SCHMIER & FEURRING PROPERTIES, INC.
>
> LOCATION OF OPERATIONS: MISSION BAY PLAZA CINEMA, 200443 STATE

5

RD. 7, BOCA RATON, FL 33498. (Certificate of Insurance, Am. Joint Trial Ex. 7.)

22. The certificate of insurance contains the following pre-printed language:

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON YOU THE CERTIFICATE HOLDER. THIS CERTIFICATE IS NOT AN INSURANCE POLICY AND DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES LISTED BELOW.  (Certificate of Insurance, Am. Joint Trial Ex. 7.)

23. The pre-printed language of the certificate of insurance further provides:

The insurance afforded by the listed policy(ies) is subject to all their terms, exclusions and conditions and is not altered by any requirement, term or condition of any contract or other document with respect to which this certificate may be issued.  (Certificate of Insurance, Am. Joint Trial Ex. 7.)

*Lease Agreement between General Cinema and Mission Bay*

24. Pursuant to Article X, Section 1 of the Lease between General Cinema and Mission Bay, General Cinema agreed to :

[I]ndemnify and save harmless Landlord [Mission Bay] from and against all claims of whatever nature arising from the use or occupancy of the demised premises or the operation of Tenant's business or from any act, omission or negligence of Tenant, or Tenant's contractors, licensees, agents, servants or employees, or arising from any accident, injury or damage whatsoever caused to any person, or to the property of any person, occurring during the term hereof in or about Tenant's theatre building on the demised premises; or arising from any accident, injury, or damage occurring outside of the theatre building on the demised premises but within the Shopping Center Development of which the demised premises are a part, where such accident or damage or injury results from an act or omission on the part of Tenant or Tenant's agents or employees.  This indemnity and hold harmless agreement shall include indemnity against all costs, expenses and liabilities incurred in or in connection with any such claim or proceeding brought thereon, and the defense thereof.  (Lease Agreement between Mission Bay and General Cinema Corp., Am. Joint Trial Ex. 8.)

25. Under Article X, Section 2 of the Lease, General Cinema agreed to maintain a comprehensive liability policy which named Mission Bay as an insured and under which General

6

Cinema's insurer agreed to defend Mission Bay and hold it harmless from and against all liability arising out of all claims mentioned in Section 1 of Article X and specifically for all claims occurring inside the General Cinema theatre. The minimum limits of liability of the insurance specified $3 million in coverage. (Lease Agreement between Mission Bay and General Cinema Corp., Am. Joint Trial Ex. 8.)

26. Under Article X, Section 4 of the Lease, Mission Bay agreed to indemnify and hold harmless General Cinema "from and against all claims arising out of negligence" of Mission Bay. (Lease Agreement between Mission Bay and General Cinema Corp., Am. Joint Trial Ex. 8.)

### III. Conclusions of Law

1. Article X, Section 1 of the lease only imposed an obligation on General Cinema to indemnify Mission Bay from any claims arising from the negligence of General Cinemas and its contractors, licensees, agents, servants and employees. Article X, Section 2 of the lease only imposed an obligation on General Cinema to obtain insurance coverage naming Mission Bay a named insured in the amount of $3 million to indemnify and hold Mission Bay harmless from any liability mentioned in Section 1. Therefore, the lease only imposed on General Cinema the obligation to provide insurance coverage to the extent of the obligation to indemnify Mission Bay from General Cinema's negligence.

2. The indemnification language in Article X, Section 1 of the lease did not impose upon General Cinema the obligation to indemnify Mission Bay for Mission Bay's negligence. In order to impose such an obligation on General Cinema, the lease would have had to clearly and unambiguously set forth that requirement. <u>University Plaza Shopping Ctr. v. Stewart</u>, 272 So. 2d 507 (Fla. 1973). The lease in question did not do so. This conclusion is buttressed by Article X,

Section 4 of the lease which imposes an obligation on Mission Bay to indemnify and hold harmless General Cinema from claims arising out of Mission Bay's negligence. If it was intended that General Cinema would indemnify Mission Bay from Mission Bay's own negligence, Mission Bay would not have agreed to indemnify General Cinema from Mission Bay's negligence.

      3.  The policy of insurance obtained by General Cinema from Liberty Mutual is consistent with its contractual obligation under the lease.[5] Under the Blanket Additional Insured Amendment, Mission Bay is included under the policy as an insured because General Cinema "agreed in writing [i.e., the lease] to provide liability insurance" to Mission Bay. However, that provision "applies only to coverage and limits of insurance required by the written agreement." The "written agreement" (i.e., the lease) only provided for coverage for General Cinema's negligence, not coverage for Mission Bay's own negligence. Specifically, Article X, Section 2 of the lease required coverage to the extent coverage was required by Section 1, and Section 1 provided coverage for General Cinema's negligence, and not for Mission Bay's own negligence.

      4.  National Union's reliance upon Container Corp. of Am. v. Maryland Casualty Co., 707 So. 2d 733 (Fla. 1998) to support entitlement to coverage under Liberty Mutual's policy for its own negligence is misplaced. In Container Corp., the insurance policy which named Container Corp. as an additional insured had "no reference to the contract" between Container Corp. and its indemnitor. Id. at 735. Nor did the policy have any language limiting the extent of coverage. Id. at 736. Here, the Blanket Additional Insured Amendment specifically refers to and

---

[5] The Court acknowledges that the policy is not consistent with the lease with respect to the policy limits General Cinema was to obtain. This inconsistency, however, is irrelevant because the loss in question was less than the policy limits obtained by General Cinema.

incorporates the lease agreement between Mission Bay and General Cinema, as evidenced by the language "for whom you have agreed in writing to provide liability insurance." Furthermore, the policy contains limiting language; i.e., "[t]he insurance provided by the amendment . . . [a]pplies only to coverage and limits of insurance required by the written agreement." Because the policy in question both refers to the lease and limits coverage to that required by the lease, the policy clearly does not provide coverage to Mission Bay for its own negligence.

5. Because the March 10, 1995 certificate of insurance was drafted and issued by Liberty Mutual's authorized representative, Christine Merline, on Liberty Mutual's own letterhead, it is evidence, on its face, of LaSalle, Schmier and Mission Bay's "additional insured" status under Liberty Mutual's policy, regardless of the disclaimer language that the certificate of insurance is issued for "informational purposes only." See Sumitomo Marine & Fire Ins. Co. of Am. v. Southern Guaranty Ins. Co. of Georgia, 337 F. Supp. 2d 1339 (N.D. Ga. 2004) (party becomes insured based on a certificate containing disclaimer language issued by agent of insurance company); Blackburn, Nickels & Smith v. National Farmers Union, 482 N.W.2d 600 (N.D. 1992) (certificate of insurance with disclaimer language is written statement to customer of insurance coverage); West Am. Ins. Co. v. J.R. Constr. Co., 777 N.E.2d 610 (Ill. App. Ct. 2002) (certificate with disclaimer language confers status of insured under policy); Pekin Ins. Co. v American Country Ins. Co., 572 N.E.2d 1112 (Ill. App. Ct. 1991) (same);[6] see also General Accident Ins. Co. of Am. v. American Nat'l Fireproofing, Inc., 716 A.2d 751 (R.I. 1998)

---

[6] Neither the parties nor the Court has found Florida law that addresses the significance of the disclaimer language on the certificate of insurance. The parties did, however, point to law in other jurisdictions that the Court may consider in resolving this issue. See State Farm Fire and Casualty Co. v. Steinberg, 393 F.3d 1226, 1231 (11th Cir. 2004) (the paucity of Florida cases on this point requires that the court look to cases decided in other jurisdictions).

(certificate of insurance is evidence of an underlying agreement).

      6. While the disclaimer language serves to inform the certificate holder that it is necessary to look to the policy to determine the scope of coverage, it does not impact whether an entity has status as an insured.[7] In other words, the disclaimer language functions to inform the certificate holder that the certificate of insurance must be read in conjunction with the terms, conditions and exclusions of the policy. As such, the disclaimer language may result in a scenario where a party is an insured under the policy pursuant to a certificate of insurance, but is still not entitled to coverage under the policy because the claimed loss is outside the scope of coverage for the policy or is specifically excluded. See American Country Ins. Co. v. Kraemer Bros., Inc., 699 N.E.2d 1056, 1060 (Ill. App. Ct. 1998) ("if the certificate includes a disclaimer, the insured may not rely on representations made in the certificate but must look to the policy itself to determine the scope of coverage"); Granite Const. Co., Inc. v. Bituminous Ins. Cos., 832 S.W.2d 427, 429 (Tex. App. Ct. 1992) (certificate which evidenced status as insured provided only coverage that was provided by the insurance policy itself).

      7. The certificate of insurance was intended to demonstrate to Mission Bay, as well as to Schmier and LaSalle, that there was insurance in place, consistent with General Cinema's obligations under the lease. Even though the lease did not entitle Schmier and LaSalle to additional insured status under the policy, the certificate of insurance gave them that status. As such, under the certificate of insurance, Schmier and LaSalle were to be indemnified and

---

[7] Liberty Mutual has cited various cases to the Court to support its position that certificates of insurance with disclaimer language cannot create coverage and are for "informational purposes" only. None of these cases are binding authority and the Court chooses not to adopt the reasoning of those cases.

provided with coverage for General Cinema's negligence, but the certificate of insurance did not provide for indemnification and coverage for Mission Bay, Schmier and LaSalle's own negligence. In other words, the certificate of insurance did not provide them with coverage in excess of what the policy provided. This is evidenced by the certificate of insurance's express provision that it did not amend, extend or alter the coverage provided under Liberty Mutual's policy. Significantly, the Liberty Mutual's policy did not provide coverage for the additional insured's own negligence. Thus, Schmier and LaSalle were entitled to no more under the policy than what the policy gave to Mission Bay.

      8. The Court finds that LaSalle, Schmier and Mission Bay did not detrimentally rely on the certificate of insurance. Neither LaSalle, Schmier nor Mission Bay could have reasonably relied upon the certificate of insurance as providing coverage in excess of what General Cinema was obligated to obtain under the lease. These entities had their own policy of insurance in place to cover the loss, which was in place before the Liberty Mutual policy was obtained. Therefore, they did not fail to get coverage in reliance upon the certificate of insurance, and they did not suffer a loss without insurance coverage. Nor did they prove at trial an actual out-of-pocket loss in terms of increased premiums for future coverage. The evidence of actual losses provided by National Union was, at best, speculative.

      9. Lastly, the Court finds that a judgment in favor of National Union would result in an inequitable windfall to National Union and its insureds. Essentially, it would result in the insurer for the non-negligent party having to bear the cost of paying a judgment for the liability of the negligent party. General Cinema did not contract to provide such coverage. Neither the Liberty Mutual policy nor the issuance of the certificate of insurance altered the rights and obligations of

the respective parties.

## IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) National Union shall take nothing from Liberty Mutual.

2) The Clerk shall close this case and all pending motions are denied as moot.

3) A judgment reflecting the Court's ruling will be entered separately.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of February, 2008.

_____
KENNETH A. MARRA
United States District Judge

Copies to:

All counsel of record